Good morning. Good morning, Your Honors. My name is Elizabeth Kessler, and I'm here for the defendant and appellant Lilian Myers. This is a case in which qualified immunity has been denied to Ms. Myers. Qualified immunity is a very important protection for public officials because it immunizes them from lawsuits for performing discretionary functions in their daily duties, discretionary functions that are constantly under scrutiny by a number of people, including their own citizens, including the media, including regulatory agencies. Ms. Kessler, the district court denied you qualified immunity not because he thought you might not be entitled to it, but that there were material issues of fact that had to be resolved first, not the least of which is who was Mr. Mango working for and what authority did your client have, if any, to release him from his duties on the date in question. How can we get around the district court's determination that these facts are going to have to get fleshed out before we can apply the law of qualified immunity? Your Honor, the question of the employment status of Mr. Mango is precisely the reason why qualified immunity should be allowed here. But don't we have to assume that he was a joint employee of Bell and Maywood in order to reach the qualified immunity issue? No, because if we look at the facts that are strictly in the favor of the plaintiff here, we find that there was a contract in place which is very significant, a focal point of the investigation of the way that we analyze this particular case. When Ms. Myers came in as the city manager of the city of Bell, she was operating under a set of circumstances that were entirely different than any city manager has ever found herself in this country, because at that time she walked in with no HR department, no personnel department, no finance department. I thought she was employed by the city of Bell but sort of seconded to Maywood? No, no, the city of Maywood. Okay, you said Bell. I'm sorry. You meant Maywood. Thank you, Your Honor. So from her perspective, she's the only employee there, right? Not just from her perspective. That was the case. She walked in the only employee for the city of Maywood on August 13, 2010. Counsel, if you take the facts in the light most favorable to the plaintiff, he says that he was a du jour employee of Maywood. And so if you take the facts in that light, what does that do to your argument? Well, let's look at the facts that the plaintiff has set forth that are admitted by both sides, and that is that the plaintiff, that, yes, Mr. Mango, the plaintiff, actually had a contract with a different city, with the city of Bell. That's an admitted fact. We've got that fact in the record. But under California law, doesn't California law recognize dual employment? I mean, the fact that he has an employment agreement with Bell doesn't defeat as a matter of law determination that he's also a co-employee under the unique facts of this case of the city of Maywood. Well, that may be a legal conclusion that can be drawn. But on the other hand, we're looking at what it is that Ms. But it's inherently a fact-based conclusion. That's the problem I'm having with your argument. We need to know what the relationship was between Maywood and Mango at the time that Ms. Myers came on the scene. The important consideration here, Your Honor, is that it was questionable as to what that relationship was. It's a contested issue of material fact, which is what the court said. Except what our focus here is this, that from Ms. Myers' point of view, coming in as an employee, as the only employee working for Maywood, she's looking at this situation to determine whether there is any clearly that if she retaliated against Mr. Mango, she would be violating his constitutional rights. And our position here, Your Honor, is this. But your position has to be that he couldn't have been an employee of Maywood, and therefore she couldn't have retaliated against him because he was talking to the FBI and to the U.S. attorney. But if we view the facts in the light most favorable to Mango, he was a co-employee of or a de jure or de facto employee of the city of Maywood, and she was his supervisor. And she knew about his cooperation through his statements to her and the L.A. Times article. And shortly thereafter, she released him, which in the light most favorable to Mango is termination. The evidence does not show that she was his supervisor. He had a contract under which he was paid by bail. And she had given him instructions, which is the key fact under California law, as to whether there's a supervisory relationship, is there not? Well, the facts in this case show that she asked him to do one thing. Two things. Two things. The first thing was? Stop the work order, get an extension from the economic development people so we don't lose our grants. Right, which he did not do. And I guess ultimately dress like you're a professional instead of wearing flip-flops and shorts or whatever he was wearing. Well, and let's take a look at each of those. In the first instance, she asked him to get the extension so that they wouldn't lose the $500,000 grant, and he didn't do it. She ultimately had to do it. And his actions jeopardized the fact that they could have lost that grant, and a grant that was very, very important to the city of Maywood, because the reason that Maywood was even in the position that it was in, where it didn't have any employees, is it was trying to save itself from bankruptcy. Otherwise, it would have had to file bankruptcy because it didn't have enough money even to pay its insurance premiums. And in the second instance, because they didn't have insurance, that was another critical factor as to why Maywood found itself in the position where it had to essentially fire every single one of their employees on June 30th, 2010, and Mr. Mangle was walking around on a construction site with flip-flops, which would have jeopardized Maywood's liability. But he's driving a Maywood City vehicle, using a Maywood City cell phone, using office space that he'd occupied for, what was it, 13 years? A little more than that, I believe. Okay. As Maywood's director of planning and development, or whatever his title was. And viewing all those facts in the light most favorable, I'm still hung up on he could easily be a joint employee, regardless of what the city of Maywood was trying to accomplish. Well, the question that we focus on is whether or not, we put ourselves in the mind of Ms. Myers at the time. Ms. Myers was the city manager walking into a job where she was handed an agreement and was told by the city attorney that you are going to be running this city under this agreement. That means that you have no employees. That means that everybody is outsourced, and the outsource of major services was given to the city of Bell under this agreement. So this is what is in her mind. Nobody is her employee. Now, does she have to tell them, could you do this, could you do that? Does she have to rely on some sort of institutional knowledge in order to run the city? Of course she does. But with respect to whether or not, in her mind, it was clearly established that this is an employee such that she could be held liable for violating his constitutional rights. That was not clearly, there was no clearly established law that would suggest to her that what she did violated his constitutional rights. Now, if I may. So would you concede that, I'll give you a hypothetical, that Maywood keeps two employees. They need a city manager and they need a director of planning, and Mangos is the director of planning. And he reports to her. And all the other facts that we've talked about are assumed to be true. Is it your position that no reasonable city manager could know that it would be unlawful to retaliate against an employee for cooperating with federal authorities investigating corruption in Maywood? No, Your Honor. Those facts I don't dispute at all. Okay. But those aren't our facts. Well, it depends on what the jury decides on this record, whether or not he was an employee and whether she was his supervisor. Your Honor, let me analogize to a case from this circuit that I think is very illustrative here. And that's the Costanich case. Costanich v. Department of Social and Health Services decided in this court in 2010. That was the case in which a social worker was sued by a foster parent on the basis that she had attended a hearing for a license revocation proceeding against the foster parent. And she fabricated evidence. And based upon that fabricated evidence, the court determined that her license would be revoked. The plaintiff sued, saying that her – that because that social worker came in and testified with fabricated evidence that her constitutional rights under the Fourteenth Amendment were violated. And this Court found that there was qualified immunity for that social worker. And what was the fact pattern there? It was a tribal issue as to whether or not the evidence was fabricated or not. The issue there was this. Would a reasonable social worker have known under clearly established law at the time that she could not fabricate evidence in a proceeding involving a license revocation? In that particular case, the court said a reasonable social worker would not necessarily know that because the – I believe it is, Your Honor. Okay. Then the question is, is she the boss and is he the employee? I'm sorry, I – Then the question is, in our case, is she the boss and is he the employee? If she's the boss and he's the employee, she can't do what she did under clearly established law. But that's not the case here because what we have to do is look at it from her point of view. And she came in knowing – Why don't we look at it from her point of view? Why? I mean, if there is another way of looking at it, too, is that a dispute about whether she's the boss? It may be dispute under different circumstances. For example, in Costanich, it may be – it's a tribal issue as to whether or not the evidence was fabricated at that hearing. No. I mean, if she purports to have the authority to release him, whatever that means, isn't that some evidence that she's the boss, she's the employer? Well, isn't it some evidence that she released him and didn't fire him? She didn't even – she didn't use that word. There is some evidence. That's why summary judgment was not appropriate. I mean, you can see it a couple of ways. You might win. The tribal issue of – the underlying tribal issue continues to be the underlying tribal issue, just as in Costanich, whether or not there was fabricated evidence continues to be the issue. The question here is, does qualified immunity apply such that the law was not clearly established? Clearly established in such a sense that Ms. Myers would be fully aware of the fact that she cannot violate his constitutional rights, cannot retaliate against him by releasing him. She didn't use the word fire. She didn't use the word terminate. She released him from performing any services with the city of Maywood because he wasn't her employee, because she was fully aware that she was operating that city under the agreement. And that's certainly the spin you put on it. And they have – they say release means basically synonymous with being fired. Is synonymous with fire? No, I think that's – you have your point of view of what release means. They have their point of view of what release means. And that's why you have a trial. But the question here is whether or not qualified immunity should apply to protect her because – and the question is whether or not it was clearly established law under the particular stance of these facts, which is what we have to look at here, whether there was – it was clearly established such that a reasonable person in the shoes of Ms. Myers would have known that she can't retaliate him. His employment status was questionable at best. In her mind, she had a contract in hand. She had been there for two weeks. She had a contract in hand. She didn't have a PR department. She didn't have an – excuse me, a personnel department or an HR department. She didn't have any employees. This was ingrained in her. This is how you're going to be running this city, without employees. So what she did is she released him. And it's also – there's another significant piece of information. The contract that Mr. Mango had with the city of Bell was a straightforward employment contract. The performance evaluations were going to be done by Bell. All – that he would be – all by performing services for the city of Maywood. The contract also said that he – The city of Bell. Okay. Mr. Mango had a contract with the city of Bell. Bell had a contract with the city of Maywood. And Bell is the one that provided all the employees to Maywood. And for that, Maywood, under the contract, was to pay Bell a lump sum. So you're down to about a minute. Okay. There's very little I can say as to the rest of my argument as to a minute. But there are a couple of things. The – I believe it's significant that Mr. Mango had told Ms. Myers that he hadn't been paid. So he – the entire time that this was going on, the entire time that he was actually at the city of Maywood while Ms. Myers was there, he had not been paid at all. She had tried to intervene with Bell to get him to get paid, but he did not get paid. So whether or not there was even an adverse employment action here is questionable. But we're down to the issue of the qualified immunity. Under these circumstances, Ms. Myers could not have known that he was an employee and that she would be violating his constitutional rights by releasing him. Thank you. Thank you. Good morning. Good morning, Your Honor. Scott Ames on behalf of the appellee, David Mango. I want to start with the issue of viewing the facts most favorably to the nonmoving party, which the Court addressed with Ms. Kessel. And the recent case of Toland v. Cotton makes it very clear that there are two prongs in this qualified immunity defense analysis. Was the constitutional right violated, which they conceded? And then the second prong, which is why we're here today, is was that constitutional right clearly established at the time of the violation? And Toland says that under either prong, courts may not resolve genuine disputes of fact in favor of the party seeking summary judgment, which is basically their argument. So you have to look at the facts, as the district court did, most favorable to the nonmovement, Mr. Mango, which is this, he was employed, he made complaints to his supervisor, Ms. Myers, about public corruption, about misuse of public funds. He told her that he'd been speaking with the FBI about this. He told her that he had a meeting with the FBI and the U.S. attorneys in five days and asked for time off to go to that meeting. There was a newspaper report four or five days after that meeting with Ms. Myers and Mr. Mango, in which the headline was public corruption or corruption scandal now affects Maywood. And Mr. Mango was quoted in there as questioning $360,000 of funds that went to an organization with ties to one of the council members. And he then goes and meets with the U.S. attorney and FBI, as he had told Ms. Myers, and then five days later he's fired. And going to the question of, you know, was he an employee or not, one fact that was overlooked there, on his last day, Ms. Myers, after firing him, said I need you to sign this declaration. We have another lawsuit involving a matter with the school district, I think. And the declaration begins with, prepared by Maywood's lawyers, I, David Mango, am the director of building and services for the city of Maywood. I've been so for the last 20 years, and I have this title. It's the declaration they prepared and gave to him. I mean, I don't even know if there are tribal issues, in fact, whether or not he was an employee or not. To me, it's pretty clear that he was. But be that as it may, I don't need to go there. So, as I said, the issue is, and the only issue is, was the constitutional violation clearly established at the time of termination on the date he was fired on August 27, 2010? And we have several cases from this circuit that says that the right was clearly established, meaning complaints of misuse of public funds and public corruption. We start with the Highland v. Wonder case. That's a 1992 case out of the circuit. That case actually involved a volunteer, not an employee, where that individual complained about misuse of funds and mismanagement of the juvenile probation system. And that individual was essentially blackballed from working in that system, and he sued under a 1983 claim. And the qualified immunity defense was denied because the right of complaining about misuse of public funds was clearly established as of 1992. We then go to Hufford v. McEnany. And the court, that's a 2001 case, and I quote, the district court correctly denied qualified immunity to the defendants because they should have been aware that discharging Hufford in retaliation for his truthful whistleblowing violated his constitutionally protected right to free speech. I think I understood Ms. Kessler to say she doesn't dispute that. She agrees that if he was an employee making a report to law enforcement of wrongdoing, that that's clearly established. Then I don't have a lot more to say because Toland simply restates what has been the law in this circuit for many, many years. Well, do you disagree that there is a material issue of fact regarding whether or not Mr. Mango was or was not an employee of Maywood? Do you think there was an issue of fact on that point? There are triable issues of fact as to whether or not Mr. Mango was or was not an employee of Maywood. We presented a litany of facts as to the fact that he was an employee of Maywood, and I can go over them again if the court likes. And they have some facts that said, you know, they have a contract with Bell. So as you said, Judge Silverman, let the jury decide. And that's what Judge Wu also said in denying the summary judgment motion. So and then finally, the cases that they do cite, the Moran case and the Brewster case and the Cassandras case, have nothing to do with whistleblowing. But I agree. Ms. Kessler just conceded that whistleblowing certainly was clearly established as of August 27, 2010. What's your response to opposing counsel's reliance on the case involving the social worker who they fabricated testimony? Again, my response there is that it is not a whistleblower case. This is a case involving my client complaining about misuse of funds and public corruption of city council members and of a former contractor. So the cases that I have cited, Hufford and Highland, Ng and Robinson, all involve misuse of public funds, public corruption, waste, mismanagement. Those are analogous here. Those are decided long before the events in question. And my response essentially is that case is inapplicable. It just factually doesn't apply. I will conclude by simply restating that the district court was correct in denying qualified immunity defense. And I simply ask this Court to affirm the district court's order. Thank you. Ms. Kessler, I think you are out of time. We'll give you a minute if you want to take another question. Please keep it to a minute if you would. Thank you, Your Honor. I wanted to address the Tolan v. Cotton case because that was brought up in the supplemental brief. Tolan v. Cotton was precisely the kind of case that really does not apply here because in that case the issue was whether or not there was a police officer that applied excessive force in violation of the constitutional rights of a suspect. The law there is very clear that a police officer who uses excessive force and violates constitutional rights does not get afforded qualified immunity. And all the Supreme Court did there was reiterate the well-established rule in this circuit as well as everywhere throughout the country, that you must look at the evidence that is in favor of the nonmoving party as opposed to the dependent. Your Honors, in this particular case, it is the issue of qualified immunity and whether or not it was a clearly established rule under the particular facts of this case, whether the – whether it was beyond debate that there was a constitutional violation here, whether the law was so clear that Ms. Myers would have known that she's violating the constitutional rights of an employee. And there was no law presented by the plaintiff that was specifically on that point that would apply to the facts of this case. Thank you, Ms. Kessler. Mr. Haines, thank you. The case is now for you to submit. Thank you.
judges: Silverman, Tallman, Rawlinson